UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.

07CR20A

**Report
&
Recommendation**

ANTWAN ROSEMOND, et al.,

Defendants.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 6).   The instant matters before the Court are three of the defendants' omnibus

motions (Docket Nos. 70[1], 87 (defendant Rosemond), 64[2] (defendant Blackwell), 68[3] (defendant

Williams)) seeking various relief (discovery, suppression of evidence, particularization).   The

Government filed a consolidated response to the initial motions (Docket No. 80) and then filed a

further response to Rosemond's second notice of motion (Docket No. 94)   The motions initially

were argued and deemed submitted on December 10, 2007 (Docket No. 95), but were reopened

---

[1]Rosemond initially filed this motion, Docket No. 69, but failed to specify relief when docketing it and then refiled the motion, Docket No. 70.  In support of this motion, Rosemond filed his attorney's affirmation in support, Docket No. 69, and schedule of discovery sought, id., and supplemented with a supplemental motion and defense attorney affidavit, Docket No. 87.

[2]Blackwell filed in support of his motion his attorney's affirmation, Docket No. 64.

[3]In support of his motion, defendant Williams filed the notice of motion and his attorney's affidavit, Docket No. 68.

on January 8, 2008, to have the Government submit the warrant application materials (Docket

No. 100).  These motions then were deemed submitted when the Government submitted these

items on January 28, 2008.

## BACKGROUND

This is a multiple defendant drug conspiracy case.  The Government states that this

Indictment stems from a long-term investigation by the Federal Bureau of Investigation into

Claude Russell, Jr.'s, cocaine operation in Buffalo (Docket No. 80, Gov't Response at 2).  The

investigation included Title III wire intercepts of telephone conversations of defendants "engaged

in the discussion of narcotics" (id. at 2-3).  After utilizing traditional, non-electronic means of

investigation of those associated with Russell, Government agents sought and obtained Title III

Orders from Judge William Skretny to intercept calls to or from four telephone numbers (Docket

No. 94, Gov't 2d Response at 2).  Based on information obtained from the intercepted calls,

Rosemond (among others) was identified as a source of supply for Russell's cocaine (id.).  The

Government then obtained search warrants of various properties.

The Government charges that eight defendants conspired to distribute controlled

substances and that some of the defendants used communications facilities to distribute

controlled substances (Docket No. 1, Indictment). There, the Government alleges that, between

December 2004 and October 2005, all eight defendants conspired to possess with the intent to

distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846

(id. Count 1).  As for the movants, Count 2 alleges that Rosemond possessed cocaine during the

period of the conspiracy (id. Count 2).  Counts 5 through 15[4] allege use of a communication

---

[4]Counts 3 and 4 involve a non-moving defendant, James Cooper.

facility (a telephone) to facilitate commission of acts constituting felonies under title 21 of the

United States Code, including calls by Rosemond (Counts 6, 5, 7), Williams (Counts 8, 9, 13),

and other defendants (Counts 10, 11, 14, 15) between July 3, and September 7, 2005 (id.).

Defendants were arraigned separately and each plead not guilty (Docket Nos. 3 (arraignment of

defendant Warren), 10 (arraignment of defendant Blackwell), 12 (arraignment of Rosemond),

17 (arraignment of Wells), minutes of Mar. 5, 2007 (arraignment of defendant Cooper), minutes

of Mar. 13, 2007 (arraignment of defendant Nance), 34 (arraignment of Perryman),

35 (arraignment of Williams)).

*Defense Omnibus Motions*

Three defendants separately moved for pretrial relief (Docket Nos. 70, 64, 68), with

defendant Blackwell joining in the motions filed by his codefendants (Docket No. 64, Blackwell

Atty. Affirm. ¶ 5).  Taking the defendants in the order in which they are mentioned in the

Indictment, defendant Rosemond seeks discovery under Federal Rule of Criminal Procedure 16,

particularization of each count pursuant to Rule 7(f), fixing the time for disclosure of

Section 3500, Rule 404(b), 609, and 803(24) materials and other trial disclosures, suppression of

evidence under Rule 12 (Docket No. 70).  He supplements this motion by seeking suppression of

evidence as a result of execution of an eavesdropping and search warrant (Docket No. 87).  He

also seeks a Franks hearing (id. Def. Atty. Aff. ¶¶ 31-37).  He seeks to suppress the eavesdrop

evidence, in part, because Government agents failed to name him in their eavesdropping

application (id. ¶¶ 42-47).  He also complains that plea or cooperation agreements given to

confidential informants were not disclosed (id. ¶¶ 38-41).

Blackwell primarily seeks a bill of particulars, since he claims the Indictment "gives zero notice to the defendant as to what he is charged with and/or what dates he allegedly committed the offenses," that the defense "has nothing to go on" (Docket No. 64, Blackwell Atty. Affirm. ¶¶ 3, 2, 4). He also seeks copies of telephone or consensual tape recordings that involved him (id. ¶ 3).

Williams moves for various forms of relief. Similar to Rosemond and Blackwell, Williams seeks a bill of particulars and (similar to Rosemond) seeks discovery and to suppress physical and electronic eavesdropping evidence. Williams specified types of discovery he seeks, as well as moving for severance. (Docket No. 68.)

## DISCUSSION

For judicial economy, this Report & Recommendation will dispose of relief that could have been separately considered in an Order.

I.      Discovery Issues

Defendants each seek various items of pretrial discovery. Specifically, Blackwell seeks copies of the telephone or consensual tape recordings that involved him (Docket No. 64, Def. Atty. Affirm. ¶ 3) and Rosemond and Williams seeks various disclosure under Rule 16 (Docket Nos. 70, 68). The Government argues that it has produced an extensive amount of disclosure to defendants (Docket No. 80, Gov't Response at 3), with one defendant conceding that he received over 1,000 pages of documents (Docket No. 68, Williams Atty. Aff. ¶ 6).

Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's Due Process Clause, a defendant is entitled to specific

exculpatory evidence which is material either to guilt or punishment.  In addition, the

Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal

Procedure and the Jencks Act, 18 U.S.C. § 3500.

    A.    Discovery

    Pursuant to Rule 16(a)(1)(A), the defendants seek any written or oral statements made by

the defendants which are within the possession custody or control of the Government, or which

through the exercise of due diligence, may become known to the Government.  Rule 16(a)(1)(A)

provides that, upon request, the Government must disclose any written or recorded statements

made by a defendant, before or after arrest, in response to interrogation by any person known to

the defendant to be a Government agent; and recorded testimony of the defendant before the

grand jury which relates to the offense charged.[5]  Failure of the Government to disclose a

defendant's statements to a Government agent may rise to the level of constitutional due process

violation. <u>Clewis v. Texas</u>, 386 U.S. 707 (1967).

    In this case, the Government has represented that it believes that it has already disclosed

all statements made by the defendants.  To the extent that the Government has not yet done so,

pursuant to Rule 16 (a)(1)(A) the Government is hereby **directed to produce** all such statements

made by the defendants.

    Pursuant to Rule 16(a)(1)(C), Rosemond also seek production of various documents,

books, records, photographs, and other tangible objects in the possession, custody or control of

the Government (Docket No. 70).  He identified several specific categories of items which they

_____

    [5]Rule 16 (a)(2) expressly provides that subdivision (a)(1) does not authorize disclosure of
statements made by Government witnesses or prospective Government witnesses except as
provided in 18 U.S.C. § 3500, the Jencks Act.

seek to be produced (id. ¶¶ 6-19; Sch. I).  The Government responds that it either has produced

such materials already or intends to do so (either as Jencks Act or Brady material, as scheduled

by the District Court) (Docket No. 80, Gov't Response at 4).  Absent a specific request of

materials yet to be produced despite the Government's voluminous production to date, the

Government's current response is sufficient.

B.      Federal Rule of Evidence 403, 404, 609 Materials

Williams and Rosemond (as to the timing of the disclosure) request disclosure of all

evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to

Federal Rule of Evidence 404(b).  Williams and Rosemond also request disclosure of all

evidence of prior bad acts that the Government intends to use for impeachment of the defendant

should he testify at trial, pursuant to Rules 608(b) and 609(a).  The Government responds that it

will disclose the conviction records of witnesses and defendants' arrest records (Docket No. 80,

Gov't Response at 5), and will produce these records with Jencks Act material, with admissibility

of such items an issue for the District Court to resolve (id. at 11).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any

such evidence it intends to use at trial."  The Government has represented that it will provide all

such material to the defendants at the time of the pretrial conference in this case (see id. at 11).

This is sufficient in this case.

C.      Expert Disclosure

Williams next seeks disclosure of expert discovery, pursuant to Federal Rules of

Evidence 702, 703, 705 (Docket No. 68, Def. Atty. Aff. ¶¶ 26-29).  The Government represents

that it will comply with production of this expert discovery pursuant to the District Court's

pretrial instruction (Docket No. 80, Gov't Response at 4).  This response is sufficient.

      D.    <u>Brady</u> Material

      Williams has requested that the Government disclose all materials potentially favorable to

him, including information to be used for the impeachment of the Government's witnesses, as

required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny.  He also seeks

production of <u>Giglio</u> material (Docket No. 68, Def. Atty. Aff. ¶ 34), <u>see</u> <u>Giglio v. United States</u>,

405 U.S. 105 (1979), namely immunity transactions with witnesses, and plea agreements.  As

stated elsewhere in this Report & Recommendation, Rosemond now also moves to suppress due

to the Government's failure to disclose plea or cooperation agreements given to confidential

informants (Docket No. 87, Def. Atty. Affirm. ¶¶ 38-41).

      <u>Brady</u> material, as those cases have come to define it, includes all evidence which may be

favorable to the defendant and material to the issue of guilt or punishment.  Such evidence

includes "[a]ny and all records and/or information which might be helpful or useful to the

defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct

. . . attributed to the [Government's] witness."  <u>United States v. Kiszewski</u>, 877 F.2d 210 (2d Cir.

1989).

      Williams' motion identifies numerous specific categories of documents encompassing

both exculpatory and impeachment <u>Brady</u> materials which they seek to obtain.  The

Government's written response is that it acknowledges its obligations under <u>Brady</u> to produce,

but does not acknowledge a constitutional right to discovery.  The Government agrees to produce

<u>Brady</u> materials pursuant to the District Court's pretrial schedule, including disclosure of plea

and cooperation agreements with confidential informants and other witnesses.  (Docket No. 80,

Gov't Response at 7, 9-10.)  It is unclear as to whether the Government's response included

considerations regarding "impeachment" <u>Brady</u> material as well as exculpatory <u>Brady</u> material.

Neither the Supreme Court, nor the Second Circuit[6], have ruled  directly on whether there

is a meaningful distinction between "exculpatory <u>Brady</u>" and "impeachment <u>Brady</u>" materials for

purposes relating to the timing within which such information must be disclosed.  Several other

courts have discussed the issue at hand, which often arises in the context of a potential, if not

inherent, conflict between the Government's obligations to disclose under <u>Brady</u> and the

Government's right to delay disclosure of certain information pursuant to the Jencks Act.   Those

cases suggest that the court has some discretion with respect to directing the timing of such

disclosure.   <u>United States v. Campagnuolo</u>, 592 F.2d 852 (5th Cir. 1979) (the court interpreted

<u>Brady</u> to require disclosure "at the appropriate" time, which often is prior to trial); <u>United States</u>

<u>v. Perez</u>, 870 F.2d 1222 (7th Cir. 1989) (the Government's delay in disclosing <u>Brady</u> material

violates due process only if the delay prevented the defendant from receiving a fair trial); <u>United</u>

<u>States v. Ziperstein</u>, 601 F.2d 281 (7th Cir. 1979) (a defendant receives a fair trial,

notwithstanding delayed disclosure of <u>Brady</u> material, as long as disclosure is made before it is

too late for the defendant to make use of any benefits of the evidence); <u>but see</u> <u>United States v.</u>

<u>Wilson</u>, 565 F. Supp. 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior

to trial); <u>United States v. Biaggi</u>, 675 F. Supp. 790 (S.D.N.Y. 1987) (information bearing on a

witness' credibility may be turned over at the same time as [Jencks Act] materials); <u>United States</u>

---

[6]In a footnote in its opinion in <u>Lucas v. Regan</u>, 503 F.2d 1, 3 n.1 (1974), the Second
Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under
Brady be made before trial."

v. Feldman, 731 F. Supp. 1189 (S.D.N.Y. 1990) (it is sufficient for the Government to disclose

Brady impeachment materials along with [Jencks Act] materials).

The Jencks Act relates only to "statements" made by Government witnesses.  Such

statements may include inconsistencies which make them useful for impeachment purposes, and

thus, subject them to disclosure under Brady principles.  To this extent, it has been suggested that

the constitutional requirements underlying Brady could act to modify the Jencks Act.  United

States v. Campagnuolo, 592 F.2d 852, 860 (5th Cir. 1979); but see United States v. Presser,

844 F.2d 1275 (6th Cir. 1988) (the Government may not be compelled to pretrial disclosure of

Brady or Jencks material).  The record in this case does not reflect whether any of the materials

withheld by the Government may be considered both Brady and Jencks material.  Certainly

"impeachment Brady" material may include several items which are not considered "statements"

under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process

requirements which underlie Brady mandate that the Court have some discretion with respect to

the timing of the disclosure of such information, even if it may be considered combined

Brady/Jencks material.  Indeed, even with respect to purely Jencks Act materials, the Second

Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and

the court, . . . sound trial management would seem to dictate that Jencks Act material should be

submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents

can be avoided."  United States v. Percevault, 490 F.2d 126 (2d Cir. 1974);  United States v.

Green, 144 F.R.D. 631 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The instant case does not appear to be unusually complex.  Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for Williams to have a fair opportunity to utilize the information at trial) is sufficient in this case.

 E. Identity of Informants

Williams seeks the identity of informants in order to attempt to interview them and to investigate their allegations, possible biases, and benefits derived from cooperating with the Government (Docket No. 68, Def. Atty. Aff. ¶¶ 31-33), in particular seeking the identities of confidential source numbers 2 and 6 (id. ¶ 33).  Rosemond now also moves to suppress due to the Government's failure to disclose plea or cooperation agreements given to confidential informants (Docket No. 87, Def. Atty. Affirm. ¶¶ 38-41), stating that nine confidential informants were involved in this case and five of them were associated with the August 10, 2005, eavesdropping application and subsequent Order (id. ¶ 40).  The Government declines to identify its informants, stating that defendants have not made a sufficient showing that such disclosure is essential to the preparation of their defenses or that disclosure of such information is reasonable in light of the circumstances (Docket No. 80, Gov't Response at 5-6).

The Government is not required to furnish the identities of informants unless it is essential to the defense.  Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988).  Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial.  United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921 (1990).

Here, Williams has not established that the pre-trial disclosure of the identities of any informants is essential to his defense.  The Government is producing the cooperation and plea agreements with informants.  This request is **denied**.

F.     Early Disclosure of Jencks Act Materials

Williams and Rosemond each seek early disclosure of Jencks Act materials, 18 U.S.C. § 3500 (Docket No. 70, Rosemond Atty. Affirm. ¶ 24, Sch. 3; Docket No. 68, Williams Atty. Aff. ¶ 35).  The Government states that it is willing to disclose, but two weeks prior to trial or as scheduled by the District Court in its pretrial Order (Docket No. 80, Gov't Response at 5, 6-7). The Government claims that it has already provided the sum and substance of the Jencks Act statements (id. at 7).

The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses.  Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial.  In this case, the Government has agreed to disclose this information pursuant to the pretrial Order (at least two weeks prior to trial) (Docket No. 80, Gov't Response at 6-7).  The defendants each have not established that prior disclosure of Jencks material is essential to the preparation of a defense in this case.  Thus, their respective timing requests are **denied**.

II.     Bill of Particulars

All movants seek particularization of the charges against them.  Williams seeks specificity as to when he joined in the alleged conspiracy, the identity of known, but unnamed co-conspirators, the names of those who agreed with him in the conspiracy and the nature of that agreement, whether Williams had actual or constructive knowledge of the possession of the

controlled substance (Docket No. 68, Def. Atty. Aff. ¶ 8).  As for the use of communication

facility counts, Williams seeks the specific acts constituting committing, causing or facilitating

the commission of acts constituting a felony, the quantity of controlled substance involved, and

the specific words used in each conversation that were allegedly in violation of 21 U.S.C.

§ 843(b) (<u>id.</u> ¶ 9).  Blackwell also seeks the dates and places where he allegedly participated in

this conspiracy (Docket No. 64, Def. Atty. Affirm. ¶ 3).  Rosemond generally argues for

particularization (Docket No. 70, Def. Atty. Affirm. ¶¶ 20-23).

  In response, the Government argues that Indictment is sufficient and bill of particulars is

not warranted here.  The Government points to the voluminous discovery already produced to

reveal defendants' respective roles (Docket No. 80, Gov't Response at 11).  Courts have

consistently rejected demands for particulars as to the formation of conspiracy or entry into

conspiracy by particular defendant (<u>id.</u> at 14, citing S.D.N.Y. cases) or disclosure of means by

which it is charged that bad and overt acts were preformed (<u>id.</u> at 14-15).  21 U.S.C. § 846 does

not require allegation of overt acts (<u>id.</u> at 15, citing <u>United States v. Bermudez</u>, 526 F.2d 89, 94

(2d Cir.), <u>cert. denied</u>, 425 U.S. 970 (1975)).

  Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct

the filing of a Bill of Particulars.  Bills of Particulars are to be used only to protect a defendant

from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at

trial.  <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990).  The Government is not

obligated to "preview its case or expose its legal theory" <u>United States v. LaMorte</u>, 744 F. Supp.

573 (S.D.N.Y. 1990); <u>United States v. Leonelli</u>, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it

disclose the precise "manner in which the crime charged is alleged to have been committed,"

12

United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).  Notwithstanding the above, there is a

special concern for particularization in conspiracy cases.  United States v. Davidoff, 845 F.2d

1151 (2d Cir. 1988).  In Davidoff, the Second Circuit stressed the need to particularize the

elements of an alleged RICO conspiracy and predicate acts to forward that conspiracy, id. at

1154-55, see also id. at 1155 (Pierce, J., dissenting) (agreeing with majority if verdict was based

upon predicate acts not specified in the Indictment or Bill of Particulars).  The Second Circuit, in

Torres, supra, 901 F.2d at 234, affirmed the denial of bill of particulars seeking similar

information about the drug conspiracy involving appellant Cruz.  Cruz had sought

particularization of the date when he allegedly joined the conspiracy, the names of known and

unknown conspirators, the dates and locations when Cruz allegedly transported contraband, and

when he arrived at a particular address, id. at 233-34.  Then District Judge John Walker found

that Cruz (and the other defendants moving for a bill) seeking a bill of particulars was an ill-

disguised attempt at discovery, holding that the Indictment there alleged specific acts and that the

Government's extensive discovery did not require issuance of a bill of particulars, id. at 234.

The Second Circuit agreed with Judge Walker's conclusions and held that denial of the bill of

particulars there was within his discretion, id.

  Upon review of the Indictment and the Government's response to this motion here, the

Court finds that each defendant is **not entitled** to a Bill of Particulars inasmuch as they are

sufficiently advised of the charges against each of them to allow for the proper preparation of a

defense, to avoid surprise at trial, and to protect the defendants from double jeopardy.  Thus,

defendants' respective motions for this relief are **denied**.

III.     Suppression of Evidence

A.     Electronic Eavesdropping Evidence

Next, defendants each seek to suppress electronic eavesdropping evidence.  Rosemond argues that this evidence should be suppressed because he was known to authorities but was not named in the application for the wiretap (Docket No. 87, Def. Atty. Aff. ¶¶ 11-15, 42-44, 47). He contends that there was no necessity to resort to a wiretap, where other means (including pursuing a codefendant to turn him into a "snitch") were available and agents' statements in their supporting affirmations that other means would not be effective or were considered mere "boilerplate" (id. ¶¶ 11-30).  Williams argues that there was no probable cause or necessity for issuance of the wiretap warrant (Docket No. 68, Def. Atty. Aff. ¶¶ 38, 40-42).

The Government contends that there is no basis to suppress this evidence under 18 U.S.C. § 2518(10)(a).  The three grounds for suppression of Title III evidence rest upon defects with the Title III application or Order, or for the absence of necessity of wire interception under § 2518(1)(c), and that serious consideration of non-electronic means was made prior to application for the Title III Order (Docket No. 80, Gov't Response at 16).  The Government argues that the Title III application was supported by probable cause, or the Leon good faith exception should apply to cover the agents' reliance upon the intercept Orders (id. at 16-17, 18; see No. 94, Gov't 2d Response, at 3-11).  As for not naming Rosemond in the warrant application, the Government contends that, at that time, his name was unknown and the Government lacked probable cause that an offense was committed to name him in the application, but that the Government later learned of Rosemond's identity and his involvement (Docket No. 94, Gov't 2d Response, at 9-10).

14

1.      Necessity of Eavesdropping

Williams first argues that eavesdropping was not necessary given the numerous

confidential sources the Government could have used (Docket No. 68, Williams Atty. Aff. ¶¶ 38,

40, 50).  Rosemond argues that the Second Circuit requires an adequate examination of the non-

wiretap investigative means before approving a wiretap (Docket No. 87, Rosemond Atty. Aff.

¶¶ 19, 20, quoting and citing United States v. Lilla, 699 F.2d 99, 104, 103-05 (2d Cir. 1983)).

The Government responds that this Circuit only requires that the agents "give serious

consideration to the non-wiretap techniques prior to applying for wiretap authority," and inform

the Court why they believe "that such non-wiretap techniques have been or will likely be

inadequate," United States v. Bianco, 998 F.2d 1112, 1127 (2d Cir. 1993) (quoting United States

v. Lambert, 771 F.2d 83, 91 (6th Cir.), cert. denied, 474 U.S. 1034 (1985)) (Docket No. 80, Gov't

Response at 16, emphasis in original eliminated), arguing that the affidavit in support of the

wiretap application contain information about other techniques (Docket No. 80, Gov't Response

at 16).

A review of the wiretap applications reveals that this investigation used various non-

electronic means leading to the applications for wiretaps (Special Agent Jancewicz Appl. Aff.,

05 Misc. Cr. 61, ¶ 3).  The application declared that normal investigative techniques have been

unsuccessful or appear unlikely to succeed (id. ¶¶ 13, 117).  The affiant agent discussed

consideration of other techniques, such as using confidential sources, introduction of an

undercover agent, interviews, search warrants, and discounts each (id. ¶¶ 119, 120-42).

Confidential sources are not useful here because they cannot identify the full scope of the alleged

conspiracy (id. ¶ 120).  The Government thus has established that non-electronic surveillance

means had been considered and shown to be ineffective in detecting the alleged drug conspiracy

and justifying eavesdropping.  Defendants' objections on this ground should be **rejected**.

2. Probable Cause

Williams examined the affidavit in support of the eavesdropping warrant and conclude

that it lacks indicia of probable cause to support the warrant (Docket No. 68, Williams Atty. Aff.

¶¶ 41-49).

The test of probable cause for a wiretap is the same for a search warrant, that (under the

totality of circumstances) there is probable cause to believe that a crime has been, is, or is about

to be committed and that communications about the crime will be obtained through the wiretap,

see 18 U.S.C. § 2518; United States v. Rowell, 903 F.2d 899, 901-02 (2d Cir. 1990) (Docket

No. 80, Gov't Response at 16-17).  The reviewing Court is to accord substantial deference to the

findings of the issuing judicial officer that probable cause exists, United States v. Wagner,

989 F.2d  69, 72 (2d Cir. 1993); United States v. Nersesian, 824 F.2d 1294, 1306 (2d Cir.)

(wiretap authorization), cert. denied, 484 U.S. 957 (1987).  The Government concludes that the

supporting affidavit, taken as a whole and addressing other suspects, provided more than enough

evidence that a crime was or was about to be committed.  (Id. at 17.)

Williams focused on the particular allegations asserted as to him in the supporting

affidavit.  But looking at the totality of the assertions in the affidavit, involving all parties, shows

that probable cause exists to support the warrant.  Therefore, Williams' objection on this ground

should be **rejected**.

B.       Physical Evidence

Williams next seeks to suppress physical evidence (Docket No. 68, Williams Atty. Aff.

¶¶ 51-56).  He wants to suppress evidence seized from 223 Roslyn Avenue, Buffalo ("premise 8"

in the supporting affidavit, Aff. of James Jancewicz, sworn to Oct. 25, 2005, ¶¶ 3, 4(h), Case No.

05M1217), due to the absence of probable cause to search those premises (Docket No. 68,

Williams Atty. Aff. ¶¶ 51, 52-53).  He points to the agent's concession that there was no specific

information that cocaine would be present at those premises (id. ¶ 56, citing Jancewicz' Aff.

¶ 142, sworn to Oct. 25, 2005).

Rosemond initially sought additional time to prepare to move to suppress, due to his prior

reliance upon another defendant's motion before that defendant entered a plea (Docket No. 70,

Rosemond Atty. Affirm. ¶¶ 26-30), with that motion focused upon materials obtained from

electronic surveillance (id. ¶ 30).  He then moved to suppress physical evidence as well as the

eavesdropping evidence discussed above (Docket No. 87, Rosemond Supp'al Motion), although

the focus of the motion was upon the eavesdropping (see id. Rosemond Atty. Aff.).

The Government argues that this Court should defer to the findings of the Court that

issued the search warrant or, alternatively, apply United States v. Leon, 468 U.S. 897 (1984), and

the good faith exception for the officers executing that warrant (Docket No. 80, Gov't Response

at 18).

The Roslyn Avenue address was identified because it was Williams' house and his role in

the alleged drug conspiracy was established through the intercepted conversations (e.g.,

Jancewicz Aff. ¶¶ 134-40) and a March 2003 execution of a search warrant (id. ¶ 141).  Two

confidential sources place Williams in cocaine distribution, with one source making multiple

17

cocaine purchases from him in 2003 (id. ¶¶ 51, 61).  While the affidavit does not state that the

purchases by the one confidential source were at Williams' Rosyln Avenue address, the 2003

search of that property found cocaine.  Williams argues that this search is too remote from the

October 2005 search (Docket No. 68, Atty. Aff. ¶ 54).  But the totality of these circumstances

provides probable cause for issuing the 2005 warrant.  Williams' objection here should be

**rejected**.

   C.  <u>Franks</u> Hearing

   Rosemond, in his second motion, seeks a <u>Franks</u> hearing, <u>see</u> <u>Franks v. Delaware</u>,

438 U.S. 154 (1978), for the facts relied upon by the Government to obtain electronic

surveillance (Docket No. 87, Def. Atty. Affirm. ¶¶ 31-37).  Williams also seeks a <u>Franks</u> hearing

to determine the reliability of the information provided by informants in support of the

eavesdropping application (Docket No. 68, Williams Atty. Aff. ¶ 40; <u>see</u> Docket No. 80, Gov't

Response at 17).

   The Government responds that Williams fails to assert falsehoods or omissions of fact to

justify a <u>Franks</u> hearing (Docket No. 80, Gov't Response at 17), and the Court should deny such

a hearing as to Rosemond upon his accusation that the application merely provided boiler plate

information (No. 94, Gov't 2d Response, at 8).

   The <u>Franks</u> Court held that defendants are entitled to an evidentiary hearing if they can

make a substantial preliminary showing that the warrant affidavit contains a false statement, that

the false statement was included intentionally or recklessly, and the false statement was integral

in the probable cause finding, <u>Franks</u>, <u>supra</u>, 438 U.S. at 155-56 (<u>see</u> Docket No. 94, Gov't 2d

Response, at 8).  Both defendants here fail to meet this showing.  Rosemond merely recites that

the Government agents used boilerplate language and concludes that those were "affirmative misrepresentations and material omission" (Docket No. 87, Def. Atty. Aff. ¶¶ 34, 37), without showing that the statements in question were false or had material omissions.  He merely faults the Government for not furnishing verification for these statements (<u>cf.</u> <u>id.</u> ¶ 35).  As for Williams, he seeks the <u>Franks</u> hearing "to determine the reliability of the information provided by the informants whose statements serve as a substantial basis for the eavesdropping warrant," (Docket No. 68, Def. Atty. Aff. ¶ 40), while not stating the basis that those statements may be false.  Williams needs to first make the substantial showing that the affidavit contains a false statement in order to have the <u>Franks</u> hearing, rather than seek the hearing first to determine whether false statements were rendered.

Defendants' motions for a <u>Franks</u> hearing is **denied**.

IV.     Severance

Defendant Williams also moved for severance of his case from the other defendants (Docket No. 68).  In any event, such motions are more appropriately heard and determined by the trial court, which is in the best position to rule on the issues presented.  <u>See</u> <u>United States v. Hennings</u>, No. 95CR10A, 1997 WL 714250, at *4 (W.D.N.Y. Oct. 20, 1997) (Heckman, Mag. J.) (Report & Recommendations, adopted by Arcara, J.).

V.     Hearing on Existence of Conspiracy

Williams next moves for a hearing, pursuant to Fed. R. Evid. 104, to "determine whether the government can make a sufficient showing that a conspiracy, as opposed to another relationship existed and that the statements to be introduced are not admissible under the co-

conspiracy hearsay exception" (Docket No. 68, Def. Atty. Aff. ¶ 28).  Although not addressed by

the Government in its response, this issue is also better determined by the trial court.

## CONCLUSION

Based upon the above, defendant Rosemond's omnibus motions (Docket Nos. 70, 87) for

a bill of particulars is **denied**; for discovery is **granted in part, denied in part** as specified

above; and for holding a <u>Franks</u> hearing is **denied**.  It is recommended that Rosemond's motion

for suppression of eavesdrop evidence should be **denied**; for suppression of physical evidence

should be **denied**

Defendant Blackwell's motion (Docket No. 64) for a bill of particulars is **denied** and for

discovery is **granted in part, denied in part** as specified above.  Where he joins in

codefendants' motions, Blackwell should receive the same relief as they receive.

Defendant Williams' omnibus motion (Docket No. 68) for a bill of particulars is **denied**;

for various discovery relief is **granted, in part, denied in part** as specified above; for holding a

<u>Franks</u> hearing is **denied**.  It is recommended that Williams' motion for suppression of eavesdrop

evidence should be **denied**; and for suppression of physical evidence should be **denied**.

Williams' motion for severance and motion for a hearing to establish the existence of a

conspiracy are deferred for consideration by the District Judge.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      February 22, 2008